BAUM v. BELL.

1. A caused the crops of B to be seized under a warrant issued upon an agricultural lien for rent, whereupon B gave bond and recovered the crops so seized. A then filed his complaint to recover the rent, and B moved to vacate the seizure upon the ground that the warrant had

been irregularly and improvidently issued. The Circuit Judge granted the motion, holding that B was not indebted to A. *Held*, that the Circuit Judge erred in determining, on such a motion, the merits of the issues. MR. JUSTICE MCIVER *dissenting.*

2. The affidavit to obtain a warrant of seizure under an agricultural lien, when made on information and belief, is insufficient, unless it states the facts upon which the belief is founded, and those facts are such as, if true, would be sufficient *prima facie* to warrant the belief. It must conform to the requirements of the affidavits in attachment.

3. The affidavit is insufficient to sustain such a warrant, where its allegations, as to disposing of the crops, only are "that he has reason to fear, and does believe, that the debtor has disposed of, or is about to dispose of, his crops, the effect of which would defeat his lien," and that the debtor had said that he had $325 in his pocket for the payment of the rent, but would not pay it until required by law to do so.

Before KERSHAW, J., Kershaw, June, 1887.

The affidavit upon which the warrant in this case was issued was as follows:

"SOUTH CAROLINA—Kershaw County.

"Before me personally appeared Herman Baum, who, being duly sworn, on oath says: That on or about the 23rd day of December, 1885, George W. Barnes transferred and assigned, for value received, to H. Baum a rent lien executed by J. J. Bell on the first day of December, 1885, whereby he gave to the said G. W. Barnes a lien on all of the crops to be raised on the Mobley plantation, in the said county and State, during the year 1886, to secure the payment of three hundred and twenty-five ($325) dollars for the rent thereof, which rent was to become due and payable to the said Geo. W. Barnes on or before the first day of October, 1886; that said lien was duly recorded in the clerk's office for said county and State on the 8th day of December, 1885; that the said J. J. Bell was notified of the transfer of said lien to H. Baum, and requested to pay the rent as therein provided, but he refused, and still refuses, to do so, saying that he would not pay the said rent to the said H. Baum, unless required to do so by law; that the deponent has reason to fear, and does believe, that the said J. J. Bell has disposed of, or is about to dispose of, his crops—the effect of which would be to defeat said lien—and he bases his belief on the fact that said J. J. Bell did, on about the 13th day of October, 1886, in Camden, S. C., tell deponent that he had the sum of three hundred and twenty-five ($325) dollars in his pocket for the payment of said rent, and afterwards, on the same day, said to the deponent that he would

not pay the rent to the deponent unless he was required by law to do so. The deponent further says that in view of the expressed determination of the said J. J. Bell not to pay the said rent lien, he is satisfied that said lienor is about to, and will, dispose of his crops unless prevented by legal process, the effect of which would be to defeat said lien and entail great loss upon the assignee of the same.                                            H. BAUM.

"Sworn to before me, at Camden, S. C., this 18th day of October, 1886.          G. H. LENOIR, [L. S.] Notary Public."

The order of the Circuit Judge was as follows:

The defendant above rented a tract of land belonging to Mrs. Mobley from Geo. W. Barnes, who was her agent to let and collect for her the rents of said lands when they became due.

Defendant signed a contract under seal, whereby he agreed to pay to Barnes the rent of the Mobley place for the year 1886, and gave a lien on his crop to secure the same, and in the same instrument. This instrument is dated December 8, 1885, and the contract is for the year 1886. There is no intimation in the instrument of the agency of Barnes, but he is styled the lessor, and Baum denies all knowledge or notice that he was acting as agent in the transaction. Afterwards the lien or contract for rent was endorsed as follows: "For value received, I assign the within to H. Baum. G. W. Barnes." In this condition, Baum says in his affidavit that the paper was delivered to him to secure him for money advanced to the wife of Barnes at that time, a mortgage on her real estate having at the same time been taken to secure said advance of money.

When the rent became due, it was demanded by Baum, but payment was declined by Bell, who says in his affidavit that he was notified by Mrs. Mobley that Barnes had no authority to represent her in the collection of said rents, before he knew of the transfer of said agreement to Baum. Baum thereupon procured the crop, made on the Mobley place by Bell, to be attached for the payment of said rent to him.

The present motion is made by Bell to set aside the attachment.

First, it is claimed that the affidavit is not sufficient to justify the issue of the attachment warrant. On this point, it is contended that the amendment of the general statutes by the act of 1885, page 429, requires that the affidavit in such a case as this must

conform to all the requirements of the law in regard to attach-
ments under the Code, sec. 250, that is, that a fraudulent purpose
of disposition of his goods must be charged, as there required, in
order to obtain a warrant of seizure; and here, that there is no
such charge of fraud.

With this contention I cannot agree. The amendment must
be construed in connection with the law amended, and examining
it thus, it will be found not to interfere in any degree with the
enactment of section 2398 of the General Statutes, except to add
thereto the provisos enacted in 1885. Construing the statutes
and the amendments together, we find that it reads thus: In
order to procure the seizure of the crop in satisfaction of the lien,
the lienee must show to the satisfaction of the proper officers that
the lienor is about to sell or dispose of his crops, or in some other
way "is about to defeat the lien: provided, that the affidavit and
statements to be used to obtain such warrant of seizure shall con-
form as nearly as may be to the practice relating to the issue of
warrants of attachment under the code of procedure; and the
person against whom it is issued shall have the right to move to
vacate said warrant of seizure for any of the causes which would
be sufficient to vacate a warrant of attachment issued under the
code of procedure," &c.

The proviso neither expressly or by implication prevents the
issue of a warrant of seizure, whenever it is shown that the "lienor
is about to defeat the lien" in some way other than the disposal
of his crop. If it did, the proviso would fail of its effect to that
extent, because "a proviso repugnant to the body of an act is
void." I conclude, therefore, that the affidavit was sufficient.

Upon the facts of the case, as made to appear by the affidavits,
I think the most important question is, whether Mr. Baum ac-
quired by the assignment a right to the rents secured by the lien.
Barnes was the agent of Mrs. Mobley, to let and receive the rents
of said place. Bell knew of such agency, and contracted with
Barnes as such. Barnes took the obligation in his own name.
The rents undoubtedly belonged to Mrs. Mobley. She might at
any time have revoked the agency, and demanded of Barnes the
surrender and transfer to her of the securities taken by him for
the rents, and might have enforced their collection by proceed-

ings thereon in her own name. All this will be conceded, no doubt.

Then, the only question is, what did Mr. Baum acquire by his purchase of the lien, or its assignment to him by Barnes, in order to secure advances made to his wife? This is an unnegotiable instrument—a chose in action—not transferrible under the law merchant. Its transfer is subject to all the equities of the parties thereto, and the only interest acquired by the assignee is that of the assignor. He can take nothing under such an assignment but that, and can stand in no better position in relation to the instrument than the person from whom he received it. *Add. Cont.*, 295.

Such was the common law in regard to the assignment of unnegotiable securities—bonds, covenants under seal, and the like. The only exception was in the case of bills of exchange and other papers negotiable under the *lex mercatoria*. As Judge Story says in his work on Equity Jurisprudence, "It is a well known rule of the common law that no possible right, title, *or thing in action* can be granted to third parties." Sec. 1039. "But Courts of Equity will support assignments, not only of choses in action and of contingent interests and expectances, but also of things which have no present actual or potential existence." Sec. 1040. "But in these days the ancient rule of law has evaporated to a mere shadow. It no longer prevents the assignee from suing, but regulates merely the form of his action." Addison on Contracts, 309. That is to say, he may not sue in his own name, but must bring the action in the name of the original assignor, who is deemed a trustee *quoad hoc*. One of the results of this necessity of suing in the name of the assignor, or rather of want of legal title in the assignee, was that the assignee held the thing assigned, with all the equities and defences to which it was subject in the hands of the assignor at the time it was assigned, good even up to the time that the debtor had notice of such assignment.

It is in recognition of these well settled principles that our Code of Procedure, section 133, was enacted. It declares that, "In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other

defence existing at the time of, or before, notice of assignment,"
&c. Our own cases fully support these views. *Cantey* v. *Blair*,
1 *Rich. Eq.*, 41, decides that the assignee of a judgment is not
within the rule which protects a purchaser for valuable consider-
ation without notice. The case of *Maybin* v. *Kirby*, 4 *Rich. Eq.*,
105, declares the same principle in regard to assignees of a chose
in action, and says the assignee takes only such interest as the
assignor has, and is bound by all the equities binding on the
latter. Also, the case of *Peek* v. *Wakely*, 1 *McCord Ch.*, 43, is
to the same effect.

It is needless to pursue this discussion further. It is evident
from what has been said, that it is a good defence to Mr. Baum's
claim, to a right of action against Bell, that the title of the former
is subject to the rights of Mrs. Mobley, and that Bell is liable to
her, and not to Baum, for the money due on the contract for
rent, especially as he had notice of Barnes's want of authority in
the premises, before he had notice or knowledge of the assignment
of his obligation. The argument that Bell was guilty of an omis-
sion of due care in giving the obligation to Barnes in his own
name, cannot avail Mr. Baum. Bell was under no obligation to
regulate the conduct of Barnes in this respect. Had he put upon
the market a negotiable instrument, he would have been liable on
it, but not upon this, under the circumstances.

It is ordered and adjudged, that the levy and seizure of the
crops of the said J. J. Bell, under the lien above mentioned, be,
and the same is hereby, discharged and set aside, and that the
said crops, in whatever form they now exist, whether in money
or otherwise, be returned to the said Bell by the sheriff of Ker-
shaw County; and it having been stated that a bond for the said
property has been entered into and given by the said Bell, and
that the same was replevied, it is ordered in that case, that the
bond be cancelled and delivered up to him, and that the said H.
Baum pay the costs of this motion, ten dollars.

*Mr. W. D. Trantham*, for plaintiff.

*Mr. W. M. Shannon*, contra.

March 5, 1888. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The defendant, respondent, was a tenant, for the year 1886, on a plantation in Kershaw County, known as the Mobley place, and which, as it appears, belonged to one Mrs. M. A. Mobley. The contract of tenancy, however, which was in writing, was made with one George W. Barnes, who is styled in said contract as lessor. The rental was $325, due on October 1, 1886, to secure which a lien on the crops to be grown on the place during that year was given. This contract, some time before it fell due, was transferred by Barnes to the appellant, Baum, who, on October 18, the rent not having been paid, upon affidavit made, obtained from the clerk of the court for Kershaw County a warrant of seizure, which being placed in the hands of the sheriff, cotton sufficient to pay the rent was seized, but the defendant entering into bond as provided by law, this cotton was restored to him ; whereupon the appellant commenced action for the recovery of the said rent, to which respondent answered, claiming that Barnes did not own the land rented, and that in making the contract, he was merely the agent of Mrs. Mobley, to whom the plantation belonged, and from whom he, the respondent, had rented the land for several years anterior to 1886, all of which the appellant knew before the assignment of the contract to him.

In the meantime, and before the case on its merits came to a hearing, the respondent moved before his honor, Judge Kershaw, to set aside the attachment or warrant of seizure on two grounds: 1st. Because of irregularity, inasmuch as the affidavit upon which it was founded was insufficient. 2nd. Because the warrant was improvidently issued, the allegations in the affidavit being untrue. His honor held that the affidavit was sufficient, and declined to vacate the warrant on the grounds specified, but did set it aside on the ground that the indebtedness of the respondent, Bell, was to Mrs. Mobley and not to appellant, Baum, holding that Baum had knowledge of this before the contract of rent had been assigned to him, and that Barnes had no authority in the premises.

Baum has appealed upon two grounds : 1st. Because it was error for the Circuit Judge to set aside the warrant on grounds not raised by the defendant in his notice of motion. 2nd. Because, if they had been raised, they were insufficient. The respon-

dent gave notice of appeal also, on the ground that his honor erred in holding the affidavit, upon which the clerk issued the warrant, to be sufficient.

Assuming that the exception of the respondent is in substance a notice that he would undertake to sustain the judgment below on a ground different from that upon which the Circuit Judge rested it, we think the appeal of both appellant and respondent should be sustained, which results in an affirmation of the judgment below.

The respondent's motion before his honor, Judge Kershaw, to set aside the warrant of attachment, was based upon the two grounds ordinarily presented in such motions, to wit, irregularity and an improvident issuance of said warrant; the first being always an attack upon the sufficiency of the affidavit upon which the warrant has issued, and the second upon the truthfulness of said affidavit. His honor declined to vacate the warrant upon either of these grounds, but went, as it seems to us, into the merits of the case, which case was then pending, the appellant having before this commenced action against the respondent for the recovery of the rent, the cotton seized having been returned to respondent under bond. The defence of respondent to the complaint of appellant, set up in his answer thereto, was the precise grounds upon which his honor vacated the attachment, to wit, that the rent was really due to Mrs. Mobley, to whom the land belonged; that Barnes had no authority in the premises, and had no right to assign the rental contract to the appellant; all of which the appellant knew, and, therefore, that the complaint should be dismissed. These were the issues in the pending action, and it appears to us that it was error in the Circuit Judge to hear and determine these issues, in advance of the trial, upon a motion at chambers, made to vacate the attachment upon grounds altogether different, to wit, irregularity and improvidence, which were alone mentioned in the notice, and each of which has a well defined signification. The appellant, it seems to us, has good ground to complain that he was taken by surprise as to this matter.

But, then, when we come to look at the affidavit, we think it is obnoxious to the charge of irregularity, being insufficient, because not in full compliance with the act in such case provided.

The original act required that it should be made to appear to the satisfaction of the clerk by affidavit, that the debtor was about to sell or dispose of his crop, or in some other way was about to defeat the lien. Section 2398, *General Statutes.* The subsequent amendment of 1885 (19 *Stat.*, 429) does not dispense with these requisites, but simply provides "that the affidavit and statements to be used to obtain such warrant, shall conform, as nearly as may be, to the practice regulating the issuing of warrants of attachment under the code of procedure. * * * And that the debtor should have the right to move to vacate said warrant of seizure for any of the causes which would be sufficient to vacate an attachment issued under the code of procedure."

Now, the practice regulating the issuing of attachments provided for by the code, in so far as the affidavit and statements are concerned, is that where the attachment is sought upon the ground that the debtor has assigned, disposed of, &c., or is about to dispose of his property, &c., the affidavit must not be founded simply upon information and belief, but it must state the facts upon which this belief is founded, and, also, the facts must be of such a character that, if true, they would in law be sufficient *prima facie* to establish the belief entertained. *Smith & Melton* v. *Walker*, 6 *S. C.*, 169; *Brown* v. *Morris*, 10 *Id.*, 469; *Ivy* v. *Caston*, 21 *Id.*, 588; *Claussen* v. *Fultz*, 13 *Id.*, 478. It is to the practice under the principles decided in the cases just referred to, that we understand the amendment of 1885 refers, when it requires the affidavit and statements to be used in obtaining a warrant of seizure in agricultural or rental liens to conform as nearly as may be to the practice regulating ordinary attachments under the code. In other words, the amendment, in substance, declares that the affidavit in an agricultural warrant must contain something more than a mere statement of information and belief—it must go further, and state the facts upon which the belief is founded, and these facts must be of a character which, if true, would be sufficient *prima facie* to warrant the belief.

We do not think the affidavit here conforms to this rule. The affiant does not found his belief upon information even, but he states, "that he has reason to fear, and does believe, that the debtor has disposed of, or is about to dispose of, his crops, the

effect of which would defeat his lien." It will be observed that here is no positive allegation of either a purpose on the part of the respondent to dispose of his crops to defeat the lien, or of an act of disposition for that purpose. It is nothing more than the allegation of a fear and a belief that such purpose and act might take place, which, in themselves, would be insufficient. And when the fact upon which this fear and belief is founded is considered, the want of conformity to the practice required by the amendment of 1885, *supra*, as settled in the cases *supra*, is still more apparent. That fact is, that the respondent had said to affiant that he had the sum of $325 in his pocket for the payment of the rent, but that he would not pay it until he was required by law to do so. We do not see how this could warrant the belief or the fear that respondent was disposing of, or was about to dispose of, his crop over which the lien existed, with the view to defeat the lien. An intention to dispose of the crop, or an actual disposition of it for the purpose of defeating the lien, one or both, constitute one of the legal grounds upon which the warrant of seizure may issue; but we cannot see how a statement by the debtor, that he has money enough in his pocket to pay the lien, but that he would not pay it until required to do so by law, affords any proof that he either intended to dispose of, or had disposed of, any portion of said crop for any purpose. Nor is it sufficient to produce the belief that the debtor intended to defeat the lien in any other illegal way, unless the money in the pocket of the debtor were the proceeds of the crop. (This, however, was not the fact.) The appellant had no lien on it, and the refusal of the debtor to use it in the payment of the rent, in no way affected the lien of the rental contract on the crops. The language used by the debtor amounted to a denial of the debt, and not a threat to defeat it in the meaning of the act.

We think the warrant of seizure should have been set aside on the ground of the insufficiency of the affidavit; and upon that ground,

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MCGOWAN concurred.

MR. JUSTICE McIVER.  I concur in the result, and in the reason given for such conclusion, though I think the ground upon which the Circuit Judge rested his conclusion may also be sustained.  One of the facts necessary to be stated in the affidavit to obtain a warrant of attachment, is that a cause of action exists in favor of the plaintiff against the defendant, and here the Circuit Judge has, in effect, found as a matter of fact that no such cause of action does exist, and, therefore, one of the essential facts stated in the affidavit is found to be untrue.  This furnishes a good ground for vacating the attachment, and is one of the grounds stated in the notice of the motion, to wit, that the warrant of attachment was improvidently issued.